IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**290 AT 71, L.L.C.,**
        **Plaintiff,**

-vs-                     Case No. A-09-CA-576-SS

**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, DANA FOWLKES, and FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,**
        **Defendants.**
_____

## **O R D E R**

  BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically the Plaintiff 290 at 71, LLC ("Plaintiff")'s Amended Motion for Summary Judgment [#22], Defendant JPMorgan Chase Bank ("Chase")'s response thereto [#30] and motion to exclude and objections to evidence in support of Plaintiff's motion for summary judgment [#31], Defendant the Federal Deposit Insurance Corporation (the "FDIC")'s response [#32], and Plaintiff's reply [#37]; Chase's Motion for Summary Judgment [#23], Plaintiff's evidentiary objections [#25] and response thereto [#27], and Chase's reply [#34]; and the FDIC's Motion for Summary Judgment [#24], Plaintiff's evidentiary objections [#26] and response thereto [#28], the FDIC's response to the evidentiary objections [#35], and the FDIC's reply in support of its motion for summary judgment [#36]. Having considered the aforementioned documents, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

# BACKGROUND

The following is undisputed: in November of 2007, Plaintiff leased a plot of vacant real estate to Washington Mutual ("WAMU"), pursuant to a lease agreement (the "Lease") signed by both parties. *See* Pl.'s Mot. Summ. J., Affidavit of Bucker Baccus ("Baccus Aff.") at Ex. A. Plaintiff was the lessor, and WAMU the lessee. There is no dispute the Lease was a valid agreement, or that WAMU intended to use the real estate covered by the Lease as the site of a WAMU branch office, although WAMU had not yet done so when WAMU was declared insolvent—thus, the site was never developed, and it remains vacant today.

WAMU was declared insolvent by the Office of Thrift Supervision on September 25, 2008. The FDIC was immediately appointed as receiver for WAMU, and in that capacity it took over all of WAMU's assets and liabilites. That same day, the FDIC executed a "Purchase and Assumption Agreement" (the "PAA") with Chase whereby the FDIC sold or assigned a large portion of WAMU's assets and liabilities to Chase. Baccus Aff. (the "PAA") at Ex. B.

It is undisputed that under the PAA, all of WAMU's real property interests are divided into two main types, which affects how they are treated under the PAA. For instance, if a leasehold interest pertains to a "Bank Premise," the PAA grants Chase a 90-day option to accept or reject the lease, but if the lease does not pertain to a "Bank Premise," then it is classified as "Other Real Estate," and is sold, assigned, transferred, conveyed, and delivered to Chase outright in the PAA. *See* the PAA §§ 4.6; 3.1. It is undisputed both Chase and the FDIC considered the Lease between WAMU and Plaintiff to be a "Bank Premise" lease, such that Chase had a 90-day option to cause the FDIC to assign the Lease to Chase. *See id.* § 4.6 (granting Chase a 90-day option to cause the FDIC to assign any and all leases for "leased Bank Premises" to Chase).

On December 22, 2008, Chase issued a letter to Plaintiff informing it that under the PAA Chase had the "option to assume or not assume leases to WAMU," and that Chase had decided not to assume the Lease with Plaintiff. Baccus Aff. at Ex. D. By letter dated February 9, 2009, Plaintiff's attorney responded that Chase's representatives had already agreed with Plaintiff (on December 1, 2008) to a commencement date and a pro-rated rent for the Lease, and Chase was therefore in default under the terms of the Lease.[1] Baccus Aff. at Ex. E. Around this time, Chase also timely informed the FDIC it would not exercise its option to assume the Lease.

On March 2, 2009, the FDIC sent a letter to Plaintiff's counsel informing him Chase had decided not to assume the Lease, and the FDIC was therefore required under various statutes to decide whether the lease was "burdensome." Pl.'s Mot. Summ. J., Affidavit of R. Kemp Kasling ("Kasling Aff.") at Ex. A. The letter implied the FDIC, like Chase, considered the Lease to be a leased "Bank Premise." *Id.* On March 23, 2009, the FDIC informed Plaintiff it had exercised its right to find the Lease "burdensome" and was thereby disaffirming, or repudiating, the Lease. *See* Chase's Mot. Summ. J. at Ex. 2-A.

On February 25, 2009, Plaintiff filed suit against Chase and Dana Fowlkes ("Fowlkes") in state district court, claiming the Lease was actually transferred to Chase outright by the FDIC (without an option) in September of 2008 under the express terms of the PAA, and further that Chase had represented to Plaintiff through an agent (Fowlkes) that it assumed the lease and would perform under it. Plaintiff alleges it relied on these representations, but Chase ultimately breached the lease. Plaintiff therefore brings claims for breach of the Lease and negligent misrepresentation. The FDIC

---

[1]This allegation is also made in the present case. Specifically, Plaintiff alleges Defendant Dana Fowlkes had apparent authority to speak on behalf of Chase and represented to Plaintiff sometime in the interim before Plaintiff received Chase's letter that the Lease would be assumed and rent would be paid by Chase. *See* Orig. Pet. at ¶ 13.

intervened in the lawsuit as a matter of right, and—after the state district court granted summary judgment in favor of Plaintiff, but before it could enter judgment—timely removed the case to this Court pursuant to the Court's federal question jurisdiction. *See* 12 U.S.C. § 1819(b)(2); 28 U.S.C. § 1331.

## ANALYSIS

### I. Motions for Summary Judgment

#### a. Legal Standards for Summary Judgment

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

 **b.** **The Controversy**

The fundamental dispute presented in all of the motions for summary judgment is the same: whether or not the Lease is properly classified as a "Bank Premises" lease under the terms of the PAA (and whether Plaintiff has the right to argue it is not). Plaintiff claims because the Lease obviously does not fall within the express definition of "Bank Premises" in the PAA, it was therefore wholly assigned and transferred to Chase as "Other Real Estate" under the terms of the PAA on September 25, 2008. Therefore, Plaintiff alleges, he is now (and has been) in privity of estate with Chase, and the FDIC had no right to repudiate the Lease in March of 2009.

Chase and the FDIC, for their part, argue Plaintiff is a "stranger" to the PAA and is not in privity with any of the parties thereto (based on their interpretation of the PAA), and therefore Plaintiff has no right to interpret the PAA or challenge their interpretation of it, nor does Plaintiff have a right to object to their submission of parole evidence to support their own interpretation. The Court turns to these arguments, starting with the language of the PAA itself.

 **c.** **The PAA**

Article I of the PAA provides, "Capitalized terms used in this Agreement *shall* have the meanings set forth in this Article I, or elsewhere in this Agreement." PAA at Art. I (emphasis added). Article I goes on to define the term "Bank Premises" as follows:

> "**Bank Premises**" means the banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by [WAMU] and that are occupied by [WAMU] as of Bank Closing.

PAA at Art. I. As stated above, the parties agreed at the hearing that if the Lease is indeed classified as a "Bank Premises" lease, the 90-day option under § 4.6(a) of the PAA applies, and Chase validly exercised that option not to assume the Lease. However, if the Lease is not a "Bank Premises" lease, it is an "Other Real Estate" lease under the terms of the PAA, which means it was transferred outright to Chase in September of 2008 without an option not to assume it. The PAA defines the term "Other Real Estate" as follows:

> **"Other Real Estate"** means all interests in real estate (other than Bank Premises and Fixtures), including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights, and development rights that are owned by [WAMU].[2]

*Id.* As stated above, Chase did not have the right to reject or repudiate an "Other Real Estate" lease, but did have that right for a "Bank Premises" lease as long as it did so within 90 days. *See id.*, ¶¶ 3.1; 4.6. No party to this dispute argues the language of the PAA, quoted above, is ambiguous.

### d. Interpretation of the PAA

Because everything else turns on it, the Court starts with the question of whether Plaintiff is in privity of estate with Chase.[3] If the entire Lease was transferred outright to Chase under the PAA, Chase is in privity of estate with Plaintiff. This is so because the transfer of an entire leasehold interest

---

[2]"Fixtures" is defined as "those leasehold improvements, additions, alterations, and installations constituting all or a part of Bank Premises and which were acquired, added, built, installed or purchased at the expense of [WAMU], regardless of the holder of legal title thereto as of Bank Closing." PAA at Art. I.

[3]Although Plaintiff also argues he is a third-party beneficiary of the PAA (in addition to the argument he is in privity of estate with Chase), the argument merits little discussion. Texas courts are very reluctant to recognize third-party beneficiaries to a contract. *See MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App.–Dallas 1988, writ denied) (stressing Texas "*courts will not create a third-party beneficiary contract by implication*") (emphasis in original)). There is a presumption against third-party beneficiary agreements, and the parties to the contract must have specifically intended to create such a third-party beneficiary. *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.–Fort Worth, 1992). In determining intent, courts presume the parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out. *Id.* Because there is undisputedly no clear reference in the PAA to Plaintiff, the Court finds he is not a third-party beneficiary to the agreement. He may well be an incidental beneficiary to the contract, but an incidental beneficiary may not enforce a contract. *Bruner v. Exxon Co., U.S.A., A Div. of Exxon Corp.*, 752 S.W.2d 679, 683 (Tex. App.–Dallas 1988).

(without retaining any reversionary interest) is, by definition, an assignment.[4] *Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex.1958). After a lessee transfers an entire leasehold interest, the assignee is thereafter said to be in "privity of estate" with the lessor. *Id.* This privity of estate renders the assignee liable for the rent as set out in the lease—in other words, the assignee's signature on the agreement through which it acquires the contract rights of the lease makes the assignee liable for rental payments in accordance with the lease as if the assignee were the original lessee. *Id.*; *and see Doubledave's Pizzaworks, Inc. v. Corder*, 1994 WL 652770 at *2 (Tex. App.–Houston [14th Dist.], 1994).

Accordingly, to determine whether Chase is in privity with Plaintiff it is essential to interpret the PAA and understand what happened to the Lease under its unambiguous terms. If the PAA's definition of "Other Real Estate" does include the Lease, then the FDIC necessarily transferred its entire interest in the Lease to Chase in September of 2008, or "assigned" the Lease to Chase, and Plaintiff has been in privity of estate with Chase since that time. The central argument of Chase and the FDIC—that Plaintiff has no right to interpret the PAA because it is neither a party to the agreement nor in privity with the parties, *see* Chase's Mot. Summ. J. at 2—would be an ironic barrier to Plaintiff's argument if allowed, as if Plaintiff is correct in its interpretation of the PAA, then Plaintiff *is* in privity with Chase. Under Plaintiff's interpretation of the PAA, Chase was assigned the Lease in its entirety in September 2008. In that case, the FDIC's repudiation of the Lease (long after it had been transferred to Chase) was meaningless. The vehement arguments of the FDIC and Chase that Plaintiff's case "fails at the threshold" because of Plaintiff's lack of standing to interpret an agreement to which it is a stranger are a catch-22 that would keep Plaintiffs from asserting its rights under the

---

[4]However, where the original lessee conveys less than his entire leasehold interest, it is a "sublease" rather than an assignment. *Id.* In the case of a sublease, there is no privity between the landlord and the transferee.

Lease against the new lessee even if a valid assignment of the Lease did occur. A moment's reflection reveals that all these arguments depend on the outcome of the first: whether the Lease was indeed transferred to Chase under the terms of the PAA on September 25, 2008. If so, Chase is in privity of estate with Plaintiff and Plaintiff has the right to sue Chase for its breach. Thus, all roads lead back to this central dispute, to which the Court now turns.

None of the parties to the dispute have argued at any time the relevant language of the PAA is ambiguous. It is well established that if a contract is unambiguous, construction of the contract is a matter of law, and extrinsic evidence of the intentions of the parties or of general practice or custom is not necessary or proper. *Nixon v. First State Bank of Corpus Christi*, 540 S.W.2d 817, 820-821 (Tex. Civ. App.–Corpus Christi 1976, ref. n.r.e.); *J. R. Gray Company v. Jacobs*, 362 S.W.2d 167, 171 (Tex. Civ. App.–Austin 1962, ref. n.r.e.). This doctrine, called the parol evidence rule, provides that in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written instrument that is facially complete and unambiguous. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995).

Even if the parties do argue a contract is ambiguous, whether the contract's language is ambiguous is a question of law. *Schaefer*, 124 S.W.3d at 157. Ambiguity does not arise simply because the parties offer conflicting interpretations; rather, ambiguity exists only when the contract is susceptible of two or more reasonable interpretations. *Id.* Moreover, ambiguity must be evident from the agreement itself; it cannot be created by introducing parol evidence of intent. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006).

In the present case, the Court finds the language of the PAA is unambiguous as a matter of law, as the provisions are absolutely clear and are not susceptible to more than one reasonable

interpretation. The clear and unambiguous language of the PAA indicates the Lease was properly classified as "Other Real Estate" and transferred outright to Chase in September 2008. At the hearing on this matter, the Court questioned counsel for both Chase and the FDIC, asking whether they could point to a single word in the PAA's definition of "Bank Premises" which would indicate the definition includes the vacant lot that is covered by the Lease. Neither could. Mr. Mercer, counsel for the FDIC, held up his Exhibit B-3: the architectural plan of what was proposed to be constructed on the land covered by the Lease. He argued the plan clearly shows "Bank Premises." The Court wholly agrees with Mr. Mercer that had WAMU ever built all it proposed to build—including a banking house, drive-in banking facilities, and telling facilities—on the land, the Lease would no doubt be a Bank Premises lease. But, because it is undisputed not an iota of what was planned was actually constructed, and none of the planned structures existed (much less were occupied by WAMU) on the day of the closing, his exhibit was irrelevant.

Thus, the Court finds based on the language of the PAA that the Lease was properly classifed as "Other Real Estate," and was sold, assigned, transferred, conveyed, and delivered to Chase outright in the PAA on September 25, 2008. *See* the PAA § 3.1. Plaintiff is in privity of estate with Chase because of this transfer or assignment, and thereby has standing to bring a cause of action for breach of the Lease against Chase.

The Court notes that Chase does cite one case which, at first glance, seems to support its position: *Old Stone Bank v. Fidelity Bank*, 749 F. Supp. 147 (N.D. Tex. 1990). The plaintiff in that case, Old Stone, leased a building to Old Fidelity under the "1983 lease." *Id.* at 148-49. When Old Fidelity was eventually declared insolvent, the FDIC was appointed its receiver. *Id.* at 149. The FDIC promptly entered into a PAA with New Fidelity, whereby New Fidelity assumed most of the assets and

liabilities of Old Fidelity. Under the PAA, the 1983 lease was *properly* classified as a "bank premises" lease (this point was undisputed), and thus New Fidelity had a 90-day option to assume it. *Id.* at 149-50. The point of dispute in *Old Stone* was whether New Fidelity had actually exercised its option to assume the 1983 lease—Old Stone believed it had, whereas New Fidelity and the FDIC claimed it had not. *Id.*

Old Stone Bank sued to enforce the PAA, claiming that when the option was exercised (as Old Stone believed it had been), "there was an assignment of the 1983 Lease to New Fidelity," which "created privity of estate between Old Stone and New Fidelity," such that "Old Stone ha[d] standing to collect rent from New Fidelity." *Id.* at 151-52. But the district court held: "In order for its theory to wash, Old Stone must overcome the incredible hurdle of showing the Court how Old Stone Bank, a non-party to the [PAA], derived any benefit or right from such Agreement. *Old Stone simply can not meet this burden*." *Id.* at 152 (emphasis added). Thus, the district court found Old Stone had no standing to enforce the PAA.

Although the facts of the *Old Stone* case are similar to those of the present case, its holding is not persuasive. In *Old Stone*, the district court did not consider Old Stone's privity of estate argument; instead, it refuted only the idea that Old Stone could be considered a third-party beneficiary under the PAA. *See id.* Privity of estate was never considered because the court agreed with the FDIC and New Fidelity that New Fidelity had not exercised its option under the PAA. And because the FDIC had transferred only an *option* to Old Stone, there was no complete assignment (which requires the transfer of an entire leasehold interest), and thus no privity of estate. Thus, the *Old Stone* case, in which it was undisputed the lease in question was a Bank premises lease, is hardly compelling authority.

-10-

Chase also objects Plaintiff has not shown Chase breached the Lease, as it was the FDIC, not Chase, that actually sent a letter repudiating the Lease. This argument will no doubt be the subject of later controversy. For the present, however, the Court does not decide whether Plaintiff has fulfilled its obligations under the Lease or whether Chase has breached its obligations; in short, the record is simply not sufficient to determine as a matter of law whether the Lease has been breached (especially because Chase addresses only the argument it actually repudiated the Lease, asserting it did not). Thus, the Court determines as a matter of law only that the Lease was assigned to Chase on September 25, 2008 pursuant to the terms of the PAA, such that Plaintiff's motion for summary judgment must be GRANTED in part on this ground, and Chase's and the FDIC's motions for summary judgment must be DENIED on this ground.

f. **Parol Evidence**

Both the FDIC and Chase attempt to put forth various types of parol evidence to justify their agreed-upon interpretation of the PAA. Of course, the parol evidence is inadmissible given the fact that all of the parties agree the PAA is unambiguous. To get around this prohibition, Chase argues a "stranger" to the contract, such as Plaintiff, has no right to assert the parole evidence rule. In other words, the defendants argue because Plaintiff is a "stranger" to the PAA, it has no right to object to their agreed-upon interpretation of its terms (a convenient interpretation which, the Court notes, has absolutely no grounding in the language of the PAA, and is a creature entirely of the parties' own fanciful creation).[5]

---

[5]Under this contention, the FDIC and Chase could determine between themselves—subsequent to the PAA—what property is "Bank Premises" and what property is "Other Real Estate," notwithstanding the express definition in the PAA and based entirely on their own whims. This would render the words of the contract absolutely meaningless.

However, this argument is entirely foreclosed if Plaintiff is in privity with a party to the contract (as the Court has determined he is). *See United States v. Vahlco Corp.*, 720 F.2d 885, 892 (5th Cir. 1983) (citing *Ragland v. Curtis Mathes Sales Co.*, 446 S.W.2d 577, 578 (Tex. Civ. App. 1969)). For instance, in *Brannon*, the Texas Supreme Court held parol evidence was indeed inadmissible to prove that a "lease rental" was bonus consideration for an unexecuted lease rather than a rental payment due under a former, executed lease. *Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219 (Tex. 1977). Because the party to the former lease may have had rights under that lease *if those rights had not been extinguished by the new lease*, the party to the former lease was not a "stranger" to the new lease, even though not a party to it, and was allowed to challenge the agreed-upon interpretation of both parties to the new lease, and to assert the parol evidence rule. *Id.* The similarities to the present case are striking: as Plaintiff can show he has rights under the Lease against Chase only if he is allowed to challenge the defendants' interpretation of the PAA, and assert the parol evidence rule to exclude improper evidence of its unambiguous terms. Like the Texas Supreme Court did, this Court finds Plaintiff is not a stranger to the PAA, and thus may assert the parol evidence rule to exclude improper evidence. Since the PAA is unambiguous, it would be error to allow its written terms and the effect thereof to be varied by parol evidence. *See id.* at 224.

The Court also notes the parol evidence the parties attempt to introduce, if anything, confirms the Court in its own interpretation of the PAA. Both Chase and the FDIC cite an FDIC manual (which was not incorporated into the PAA) that sets forth what "Bank Premises" commonly means with respect to FDIC dealings. *See* FDIC Resp. [#32] at 3 (citing FEDERAL DEPOSIT INSURANCE CORP. RISK MANAGEMENT MANUAL OF EXAMINATION POLICIES ("MANUAL") § 3.5); *and see* Chase's Mot. Summ. J. at 6 (same). What is instructive about the Manual is that it uses a similar, but much broader

definition of Bank Premises; apparently, Bank Premises in the Manual is defined as including "vaults, fixed machinery, equipment, parking lots, *and real estate acquired for future expansion.*" MANUAL at § 3.6 (emphasis added). Aside from the fact this citation is parol evidence of an unambiguous provision of the contract and is thus inadmissible, it sheds no light on the language of the PAA, except to lead the Court to wonder why the parties to the PAA—which had such an all-inclusive definition of Bank Premises close at hand—chose instead to include the definition they did, which is far different from the one set forth in the Manual, and makes no reference to "real estate acquired for future expansion." But, leaving this vexing (but ultimately irrelevant) question to better minds, the Court turns to other issues.

### g. Evidentiary Objections

Each of the parties have filed extensive lists of objections to the evidence submitted by their opponents. *See, e.g.* Chase's Mot. Exclude Evid. [#31]; Pl.'s Objs. to Chase's Evid. [#25]. Because none of the objected-to evidence was relied upon by the Court in reaching the conclusions contained in this order, the Court finds the objections should be DISMISSED as moot in their entirety.

### h. Negligent Misrepresentation Claim

Finally, in addition to its breach of contract claim, Plaintiff brings a negligent misrepresentation claim. The claim is based on misrepresentations allegedly made by Defendant Fowlkes to Plaintiff that the Lease would be assumed and prorated rent would be paid by Chase. *See* Orig. Pet. at ¶ 13. Chase argues this claim is foreclosed because Plaintiff seeks only economic damages, and thus the economic loss rule applies.

Under the economic loss rule, "a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent

-13-

from the economic losses recoverable under a breach of contract claim." *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998). The burden is on the plaintiff claiming negligent misrepresentation to provide evidence of this independent injury. *Id.* The rationale for this rule is that "[r]epudiating the independent injury requirement for negligent misrepresentation claims would potentially convert every contract interpretation dispute into a negligent misrepresentation claim." *Id.* at 664.

Plaintiff claims it has asserted the negligent misrepresentation claim only in the alternative to its breach of contract claim. But the difference is without a distinction, as the question does not turn on whether the parties are in privity: Texas state courts have consistently applied the economic loss rule to negligence claims even between parties who were not in privity. *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 799 (Tex. App.–Houston [1st Dist.] 2007). Plaintiff does not otherwise respond, except to argue there are fact issues that make summary judgment on this claim premature. The Court does not agree—Plaintiff is seeking contractual damages only, and therefore the misrepresentation claim is foreclosed to him under clear Texas precedent unless he can show an independent injury, which he has not done (or even attempted to do). Chase's motion for summary judgment is GRANTED IN PART, solely on this issue.

## Conclusion

In accordance with the foregoing:

>IT IS ORDERED that Plaintiff 290 at 71, LLC's Amended Motion for Summary Judgment [#22] is GRANTED in part, insofar as it seeks judgment as a matter of law the Lease was wholly transferred to Defendant JPMorgan Chase on

September 25, 2008, pursuant to the terms of the Purchase and Assumption Agreement.

IT IS FURTHER ORDERED that Defendant JPMorgan Chase Bank's motion to exclude and objections to evidence in support of Plaintiff's motion for summary judgment [#31] is DISMISSED as moot.

IT IS FURTHER ORDERED that Defendant JPMorgan Chase's Motion for Summary Judgment [#23] is GRANTED in part, as to the plaintiff's negligent misrepresentation claim.

IT IS FURTHER ORDERED that Plaintiff's evidentiary objections to Defendant JPMorgan Chase's motion for summary judgment [#25] and to the FDIC's motion for summary judgment [#26] are DISMISSED as moot.

IT IS FINALLY ORDERED that the FDIC's Motion for Summary Judgment [#24] is DENIED.

SIGNED this the 9th day of November 2009.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE